353 A.2d 833

Herbert L. FIRING, Appellant,

v.

Hon. A. Evans KEPHART, Court Administrator, and Hon. Grace M. Sloan, Treasurer of the Commonwealth of Pennsylvania, Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 13, 1976.

Decided March 17, 1976.

See also, Pa., 353 A.2d 839.

Santangelo, Lewis & Mescolotto, Lee D. Mescolotto, Pottstown, for appellant.

Jeffrey G. Cokin, Deputy Atty. Gen., for appellee, Hon. Grace M. Sloan.

William E. Zeiter, Jonathan Vipond, III, Philadelphia, for appellee, Court Administrator.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

In November, 1969, Herbert L. Firing, plaintiff-appellant in this action, was reelected District Justice of the Peace for Magisterial District 38–2–01, and in January, 1970, he began to serve his new term. His seventieth birthday occurring on September 29, 1973, however, he was mandatorily retired, as required by Article V, Section 16(b) of the Pennsylvania Constitution. He subsequently filed a complaint in mandamus in the Commonwealth Court against the State Court Administrator and the Treasurer of the Commonwealth alleging that he had been elected to a six-year term of office which did not expire until January 1, 1976, and that Article V, Section 16(a) of the Constitution provides that the compensation of justices, judges, and justices of the peace shall not be diminished during their terms of office unless by law applying to all salaried officers of the Commonwealth; he asked that defendants [appellees] be ordered to pay the salary allegedly due him for the period subsequent to his retirement, which they had refused to pay. Appellees filed preliminary objections in the nature of a demurrer,[1] and the Commonwealth Court, with one judge dissenting, sustained the preliminary objections. See *Firing v. Kephart*, 18 Pa.Cmwlth. 578, 336 A.2d 470 (1975). This appeal followed.[2]

Initially, appellant urges that it was error to sustain appellees' preliminary objections. He argues that "the Defendants' obligation by demurring to Plaintiff's complaint is to show with certainty that the law will not per-

---

1. Other preliminary objections asserted the court's lack of jurisdiction and plaintiff's lack of capacity to sue with regard to an allegation that the Supreme Court wrongfully abolished his magisterial district. They are not directly involved in this appeal, but see note 7, infra.

2. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 233, Article II, Section 203, 17 P.S. § 211.203.

mit a recovery by the Plaintiff," and that "Defendants' position is based on their conclusion as to what the law means and does not show with certainty that the law will not permit a recovery by the Plaintiff  .  .  . or that his claim is totally devoid of merit." Appellant, however, misconceives the function of preliminary objections in our jurisprudence.

We have held that preliminary objections in the nature of a demurrer admit as true only such facts as are well-pleaded, material, and relevant and only such inferences as are reasonably deducible from such facts, that they admit neither conclusions of law nor inferences unwarranted by the admitted facts nor argumentative allegations nor expressions of opinion, and that they will be sustained only in those cases which are clear and free from doubt if to sustain them would result in the denial of the claim or the dismissal of the suit. *Hyam v. Upper Montgomery Joint Authority*, 399 Pa. 446, 160 A.2d 539 (1960), cert. denied 364 U.S. 288, 81 S.Ct. 50, 5 L.Ed.2d 38 (1960). By demurring to appellant's complaint in the instant case, appellees admitted as true the facts that appellant had been elected to the office of District Justice and that he served in that capacity until his mandatory retirement upon attaining the age of seventy, but they did not admit that his term was one of six years, since the extent of that term was a conclusion of law dependent upon the legal interpretation of the Constitutional requirement that justices of the peace be retired upon attaining the age of seventy.

Appellant nevertheless suggests that because the Constitution itself is not completely clear and free from doubt on this issue, the preliminary objections in the nature of a demurrer should not have been sustained, since such objections should be sustained only in cases which are clear and free from doubt. The test, however, is not whether the applicable law is clear and free from doubt, but whether it is clear and free from doubt from

564

the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. The role of the court in ruling on preliminary objections in the nature of a demurrer is to determine whether or not the facts pleaded are legally sufficient to permit the action to continue. This is so whether the legal determination to be made is relatively simple or relatively difficult. Cf. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969). There was no factual dispute in this case, only a dispute over the interpretation of the Constitution, and the ruling on appellees' preliminary objections was clearly the appropriate juncture for the Commonwealth Court to interpret the pertinent provisions of the Pennsylvania Constitution and determine the merits of appellant's claim. Our task on appeal is to determine whether the court's interpretation was correct.

We are here concerned with the construction of Article V, the Judiciary Article of the Constitution, which was adopted on April 23, 1968, to replace the repealed sections of the Constitution of 1874, as amended, and which took effect on January 1, 1969. Specifically, we are asked to construe Article V, Section 16(b), which requires that members of the Pennsylvania judiciary be retired upon attaining the age of seventy years, but which does not specifically state that the terms of such members shall expire upon their mandatory retirement.[3] Appellant maintains that despite this provision, his right to compensation is governed by Article V, Section 15(a), which states that "the regular term of office . . . of justices of the peace shall be six years," and by Article V, Section 16(a), which states that the compensation

---

3. Article V, Section 16(b) provides in its entirety:
   "Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six."

of the judiciary "shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth." [4] The question before us then is whether, by declining to pay appellant's salary for the period after his mandatory retirement, appellees have wrongfully diminished his salary during his term of office, or whether, as appellees contend, his term expired upon his mandatory retirement, and there was therefore no diminution of his salary *during* his term of office. In answering this question, we must be mindful of well-settled principles of constitutional construction. A constitutional provision is to be interpreted insofar as possible in terms of its spirit and intention—*Commonwealth ex rel. Attorney General v. Beamish*, 309 Pa. 510, 514, 164 A. 615, (1932)—and in its popular sense and as understood by the people who adopted it—*Goodwin v. Allegheny County*, 182 Pa.Super. 28, 31, 125 A.2d 640 (1956). Our ultimate touchstone, nevertheless, must remain the language of the Constitution itself.

In ascertaining whether or not appellant's term expired when he attained the age of seventy years,[5] we observe that the word "term" has no fixed or absolute meaning, and that its meaning in a particular instance can only be determined by reference to the applicable

4. Article V, Section 16(a) provides in its entirety:
"Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth."

5. The majority opinion in the Commonwealth Court held that this occurred on appellant's seventieth birthday and that his term expired on that date, September 29, 1973. We note, however, that it is well established at common law that one is deemed to attain a given age on the day before his birthday. See *Gerson v. Daly*, 337 Pa. 346, 11 A.2d 148 (1940); *Commonwealth v. Howe*, 35 Pa. Super. 554 (1908). Since the Pennsylvania Constitution expresses no criterion for determining when a member of the judiciary attains the age of seventy years, we think that the common-law rule must apply and that appellant attained the age of seventy years on September 28, 1973.

constitutional or statutory scheme. See *Barber v. Blue*, 65 Cal.2d 185, 52 Cal.Rptr. 865, 417 P.2d 401 (1966). Thus, although a significant precedent, it cannot be ultimately determinative of the issue before us that a New York court in *Gingold v. Apps*, 282 App.Div. 345, 123 N. Y.S.2d 707 (1953), has held that, under a New York election statute, the terms of two judges mandatorily retired because of age expired on December 31st after their seventieth birthdays, and that their successors were therefore to be elected for full terms. The applicable statute there specifically limited the terms of such judges and stated that they would expire on "the last day of December next after he shall be seventy years of age"; an elected judge was required to file "a certificate, stating his age, and the time when his official term will expire, *either by completion of a full term, or by reason of the disability of age.*" [Emphasis supplied.] The Pennsylvania Constitution, however, is not so specific. We nevertheless conclude that the Judiciary Article, taken as a whole, reveals a comparable intent on the part of its framers that the term of a mandatorily retired member of the judiciary expire upon his retirement.

Section 15(a) of the Judiciary Article does provide that "the regular term of office" of a justice of the peace "shall be six years." The use of the word "regular" in this context, however, clearly indicates that there may be other terms of office which are not regular, and that therefore appellant's term was not necessarily one of six years. Article V, Section 13(b) provides that "a vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor." It further provides that "The person so appointed shall serve for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs." It has been held that under this section a vacancy occurs when the incumbent of a judicial office dies, resigns, *retires*, or is removed,

or when his term of office ends. *Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 508, 281 A.2d 57, 68 (1971) [opinion of Mr. Chief Justice Bell, joined by Mr. Justice O'Brien and Mr. Justice Roberts]; *Allegheny County Commissioners v. Tucker [Staisey v. Tucker]*, 7 Pa.Cmwlth. 649, 653, 300 A.2d 518, 520 (1973).[6] We see no reason to distinguish, for the purpose of determining whether a vacancy exists, a mandatory retirement required by Section 16(b) from a voluntary retirement, or from an involuntary removal or demise. The intent of the framers clearly was that all of these events would cause a vacancy to occur and the previous term to expire, and thus enable the governor to appoint a successor for a new "initial term" as defined in Section 13(b). It plainly would be anomalous to construe the Constitution in a case like the present one as permitting two persons filling two separate terms to occupy the same office at the same time. Cf. *Collins v. Gessler*, 452 Pa. 471, 307 A.2d 892 (1973).[7]

In addition, there is language in the Judiciary Article which indicates that the framers intended not only that a mandatory retirement would create a vacancy in a judicial office and cause the term of the incumbent to expire, but that the term of a judicial incumbent affected by Section 16(b) would be defined not by the "regular term of office" provision of Section 15(a) but by the time he might serve prior to retirement. Article V, Section

6. As the Commonwealth Court has pointed out in *Tucker,* this Court divided equally in *Creamer* over the definition of "occurs," but not over the definition of "vacancy." There is nothing in the opinion of Mr. Justice (now Mr. Chief Justice) Jones, Mr. Justice Pomeroy, and the present writer to contradict the view that a retirement creates a vacancy.

7. It is immaterial that the record in the instant case indicates that before the governor filled the vacancy created by appellant's retirement, the Supreme Court abolished the judicial district as a separate entity and divided it between two other districts. If there was a vacancy, this clearly was within the power of the Court, pursuant to its authority under Article V, Section 7 of the Constitution. See *Collins v. Gessler,* supra.

15(b), dealing with retention elections, specifically provides as follows:

> "If a majority favors retention, the justice or judge shall serve for the regular term of office provided herein, *unless sooner removed or retired.* At the expiration of each term a justice or judge shall be eligible for retention as provided herein, *subject only to the retirement provisions of this article.*" [Emphasis supplied.]

It is true that this retention provision does not apply to justices of the peace, but we do not think that the framers could have intended the absurd result that all justices, judges, and justices of the peace would be subject to the retirement provision of Section 16(b), but that only justices and judges retained under Section 15(b) would have less than a regular term if mandatorily retired. Rather, Section 15(b) provides a clear guide to the meaning and application of Section 16(b).

We are fortified in our interpretation of the framers' intent when we consider that the well-established purpose of the prohibition against diminishing the compensation of the judiciary during their terms of office, contained in Section 16(a) but explicitly or implicitly present in the Pennsylvania Constitution since the Constitution of 1790,[8] is to maintain the independence of the judiciary from encroachment by the other branches of government. See *Bailey v. Waters,* 308 Pa. 309, 162 A. 819 (1932). When appellant ran for office in 1969,

8. Article V, Section 2 of the Constitution of 1790 provided that the judges of the Supreme Court and the presidents of the several courts of common pleas should at stated times receive for their service an adequate compensation to be fixed by law, which should not be diminished during their continuance in office. The Constitution of 1874 contained no specific prohibition against the diminution of judicial salaries, but this Court held it to be a fundamental and inherent aspect of a constitutional system based upon the separation of powers. See *Bailey v. Waters,* 308 Pa. 309, 162 A. 819 (1932). Compare Article 111, Section 1 of the Federal Constitution.

the present Judiciary Article was law, and both he and the electorate had notice that if he was elected his new term would be affected by the retirement provision of Section 16(b); his compensation, and therefore his independence, *during* his term of office was in no way affected, as it might have been had the Judiciary Article become law and his retirement been mandated during the same term of office.[9]

Nor can we agree with the dissenting opinion in the Commonwealth Court, which states that the six-year term for justices of the peace "and the age of candidates for office are no secret, and the constitutional scheme is that the voters should decide whether they want the services of an individual for the remaining time that individual may serve before retirement at age 70, with the full knowledge that they, the voters, may be called upon to pay the salary of such an individual for some period of time after mandatory retirement at age 70 until the end of the six-year constitutional term." We consider it far more likely that the voters would have assumed that appellant's mandatory retirement would not only cut short his active service as justice of the peace but his salary based on such active service as well. As we have indicated above, though the "regular" term of a justice of the peace is six years, the Constitution clearly indicates that the term of a justice of the peace does not have to be a regular one.

Judge Kramer in his dissent also points to the following language in Section 16(b):

"Former and retired justices, judges and justices of the peace shall receive such compensation as shall be

---

**9.** Section 8 of the Schedule to the Judiciary Article specifically provides:

"Notwithstanding any provision in the article, a present justice, judge or justice of the peace may complete his term of office."

Section 12 of the Schedule specifically provides:

"An alderman, justice of the peace or magistrate:

"(a) May complete his term, exercising the jurisdiction provided by law and with the method of compensation provided by law prior to the adoption of this article . . . . "

provided by law. No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six."

He reasons that since the framers did not specifically state that no compensation shall be paid to mandatorily retired members of the judiciary as they did so state with regard to those who have been suspended or removed from office, they must have intended that such persons be compensated for the unserved balance of a regular term. We are not so persuaded. Rather, it seems clear to us from the language of Section 16(b) that the framers intended to authorize—not require—the legislature to compensate those members of the judiciary who have retired, and to forbid it to compensate those who have been suspended or removed for misconduct pursuant to Article V, Section 18 or Article VI. There is a clear distinction both in fact and law between mandatory retirement and removal,[10] and so it is not significant that the framers did not include those mandatorily retired with those who are to receive no compensation because they have been removed from office. Cf. *Geary v. Phillips*, 53 Misc.2d 337, 278 N.Y.S.2d 506 (1967). Nor is it significant that the only retirement compensation actually provided a retired justice of the peace by law derives from his retirement benefits earned for prior service. The language of Section 16(a)—"Justices, judges and justices of the peace *shall be compensated by the Commonwealth as provided by law*" [Emphasis supplied]—is clearly different from the language of Sec-

10. Appellant fails to observe this distinction when he cites in support of his position our dictum in *Collins v. Gessler*, supra, 452 Pa. at 481, 307 A.2d at 897, that "defendant, as a duly elected and serving district justice of the peace, can only be removed from office pursuant to Article V, Sections 17 and 18 of the Pennsylvania Constitution." We note, however, that contrary to this dictum, Article V, Section 18(n) specifically states: "This section is in addition to and not in substitution for the provisions for impeachment for misbehavior in office contained in article six."

tion 16(b)—"Former and retired justices, judges and justices of the peace *shall receive such compensation as shall be provided by law.*" [Emphasis supplied.] The former appears to mandate compensation for active members of the judiciary, while the latter appears to make it discretionary with regard to retired members. Section 16(b) cannot therefore be construed as requiring that mandatorily retired justices of the peace be compensated for the unserved balance of a regular term pursuant to Section 16(a).

Appellant also argues that if his term of office was indeed terminated by his mandatory retirement, it would somehow render Section 16(c) of the Judiciary Article meaningless.[11] We find this argument to be totally without merit. Section 16(c) not only does not apply to retired justices of the peace, but it plainly indicates that the power of a retired justice or judge on temporary judicial service does *not* depend upon an unexpired regular term, but only upon his status as a former or retired justice or judge and the applicable rule of the Supreme Court.[12]

The order of the Commonwealth Court is affirmed.

11. Article V, Section 16(c) provides in its entirety:
"A former or retired justice or judge may, with his consent, be assigned by the Supreme Court on temporary judicial service as may be prescribed by rule of the Supreme Court."

12. Rule 701 of the Pennsylvania Rules of Judicial Administration does not require that such a former or retired judge have an unexpired term cut short by retirement, only that he not have been defeated for re-election, that he have served as a judge for an aggregate of at least ten years, and that he file a certification "that he has not, since his last judicial duty, engaged in the practice of law or in any activity incompatible with judicial office and does not intend to engage in the practice of law in the future."